**JAW LEGAL**
Jared A. Washkowitz, Esq. (7653)
1050 Bishop Street, #450
Honolulu, HI 96813
Telephone:  (808) 840-7410
Fax:  (415) 520-9729
Email:  jw102475@gmail.com

**BETTI & ASSOCIATES**
Michele M. Betti, Esq. (Admitted *Pro Hoc Vice*; CA State Bar No. 204939)
1732 Knoll Field Way
Encinitas, California 92024
Telephone:  (760) 500-5451
Facsimile:  (760) 454-2204
Email:  mbettilaw@gmail.com

Attorneys for Plaintiff
DAVID HUSTED, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DAVID HUSTED, JR., an individual,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>ROMAN CATHOLIC CHURCH IN THE STATE OF HAWAII, A.K.A. THE ROMAN CATHOLIC DIOCESE OF HONOLULU; THE DIOCESE OF BUFFALO, N.Y.; SOUTHERN TIER CATHOLIC SCHOOL ARCHBISHOP WALSH ACADEMY; THE SOUTHDOWN INSTITUTE; JAMES A. SPIELMAN; and DOE DEFENDANTS 1-10,<br><br>　　　　　　　Defendants. | Case No.   14-00192 SOM-BMK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT ROMAN CATHOLIC CHURCH IN THE STATE OF HAWAII, A.K.A. THE ROMAN CATHOLIC DIOCESE OF HONOLULU'S MOTION TO JOIN OMNIBUS MEDIATION AND STAY PROCEEDINGS**<br><br>Date:  June 9, 2015<br>Time:  2:00 p.m.<br>Judge:  Hon. Barry M. Kurren<br><br>Trial Judge:  Hon. Susan O. Mollway<br><br>Complaint Filed:  April 21, 2014<br>Trial Date:  November 17, 2015 |

# PLAINTIFF'S OPPOSITION TO DEFENDANT ROMAN CATHOLIC CHURCH IN THE STATE OF HAWAII, A.K.A. THE ROMAN CATHOLIC DIOCESE OF HONOLULU'S MOTION TO JOIN OMNIBUS MEDIATION AND STAY PROCEEDINGS

## I.    Introduction

Presently before the Court is a Motion to Compel Mediation and Stay Action Pending Mediation by only the Defendant Roman Catholic Church in the State of Hawaii aka The Roman Catholic Diocese of Honolulu.  No joinder of said motion has been filed by any of the other Defendants in the case.

## II.    Background

This case arises out of this Defendant and the other Defendants' gross negligence for negligent hiring, supervision and retention of Fr. James A. Spielman, an employee of the Defendants, and a patient of the Southdown Institute where he was treated for psycho-sexual disorders including pedophilia.  Fr. Spielman sexually abused Plaintiff David Husted, Jr. from the ages of 14-17 from September 1979 to 1982 while he was a student at Archbishop Walsh High School in New York and in Hawaii.  Evidence exists that these Defendants' had actual notice of the sexual abuse perpetrated by this priest who was under their authority.  As an assistant pastor just out of seminary school, Fr. Spielman was assigned to Scion, New York at Belmont Scion Parish, Spielman was transferred to Springville Catholic Church and then assigned as lead pastor at Lexworth State Park and responsible for three churches there.  Fr. Spielman was transferred from parish to parish as a result of his continuous abuse of children.  As early as 1970 he was

abusing little boys as young as 10 years old. Thereafter, and with knowledge of his abuse, the Diocese transferred Fr. Spielman to Archbishop Walsh High School where he would abuse Plaintiff David Husted, Jr. Evidence will show that Fr. Spielman was treated for his psycho-sexual disorders including pedophilia as early as the 1960s, yet each of the Defendants failed to remove him from and/or adequately monitor his contact with children, including Plaintiff David Husted, Jr.

## III. Legal Standard

### A. A Party Cannot Be Required To Submit To A Mediation Any Dispute He Has Not Agreed So To Submit.

The Federal Arbitration Act mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." *9 U.S.C. § 2*. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (*citing Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, (1985)). If a contract contains an arbitration clause, there is a presumption of arbitrability. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T,* *475 U.S. at 648 (quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S.

574, 582 (1960)); *Torbit, Inc. v Datanyze, Inc.*, 5:12-CV-05889-EJD, 2013 WL 572613, at *2 [ND Cal Feb. 13, 2013].

In the present case, there is no contract containing an arbitration clause to arbitrate the case, much less an agreement between the parties to mediate the case. The case law is quite clear that the court cannot require a party to submit to arbitrate a case where there is no agreement to do so. A similar argument can be made as to mediation. Participation in mediation is typically voluntary. The mediator acts as a neutral third party and facilitates rather than directs the process. Both parties have to be willing to meaningfully mediate their disputes. In the present case, Plaintiff does not have the confidence that Defendant is willing to meaningfully mediate the present case. Requesting a stay and vacating the trial date is further indication that Defendant only wishes to delay the present case and stop it from going to trial. If Defendant was truly sincere about wanting to resolve any disputes with Plaintiff, then a stay in the case and vacating the trial date would not have been requested. A meaningful mediation on Defendant's part likely would, quite frankly, lead to a quick resolution of the case thus negating the need to stay the case. Defendant is well aware that its employee was a serial perpetrator, and did in fact sexually abuse Plaintiff when he was only 14 years old. Defendant has documentation of such abuse in its employee file. Defendant is also aware that Plaintiff, like other victims of clergy sexual abuse, has suffered for many years and sustained injuries as a result of the abuse.

Although it is not the purpose of Federal Rules of Civil Procedure Rule 16(b)(7) to impose settlement negotiations on unwilling litigants, it is believed that providing a neutral forum for discussing the subject might foster it.  See *Moore's Federal Practice ¶ 16.17; 6 Wright & Miller, Federal Practice and Procedure: Civil § 1522 (1971)*.  For instance, a judge to whom a case has been assigned may arrange, on his own motion or at a party's request, to have settlement conferences handled by another member of the court or by a magistrate.  But, nowhere does it state that a case filed in a United States District Court should be mandated to the jurisdiction of a state court, which is exactly what Defendant is asking this Court to do.

> **B.     Defendant Is Asking This Court To Transfer Venue To The State Court Without Filing A Motion Pursuant To 28 U.S.C. § 1404(a) In An Attempt to Circumvent the Federal Rules of Civil Procedure.**

Defendant is trying to circumvent the Federal Rules of Civil Procedure by asking this Court to transfer venue to the state court without filing the motion required to do so pursuant to *28 U.S.C. § 1404(a)*.  Any party – plaintiff or defendant – may seek a discretionary transfer under *28 U.S.C.A. § 1404(a)* for "convenience" and "in the interest of justice." *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990).  The decision to grant a *§ 1404(a)* transfer is always discretionary with the trial court. *28 U.S.C.A. § 1404 (West)*. Because plaintiff's choice of forum is entitled to deference, the moving party (defendant) has the burden of showing that "the convenience of parties and witnesses" and "interest of justice"

require transfer to another district. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Los Angeles Memorial Coliseum Comm'n v. NFL*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), aff'd 726 F.2d 1381 (9th Cir. 1984); *Gregg Comm. Systems, Inc. v. AT & T Co.*, 575 F. Supp. 1269, 1270 (N.D. Ill. 1984). A transfer will not be ordered if the result is merely to shift the inconvenience from one party (defendant) to another (plaintiff). *In re Volkswagen of America, Inc.*, 506 F.3d 376, 385 (5th Cir. 2007) (emphasis added); *Heller Fin'l, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). A party seeking a transfer cannot rely on vague generalizations as to convenience factors. *Heller Fin'l, Inc.*, 883 F.2d at 1293.

Plaintiff's choice of forum, while not dispositive, "should be given weight when deciding whether to grant a motion to change venue." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). A transfer will not be ordered simply to make it more convenient for defendant: "The venue transfer provisions of Section 1404(a) are not meant to merely shift the inconvenience to the plaintiff." *Reed Elsevier, Inc. v. Innovator Corp.*, 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000) (internal quotes omitted). Where plaintiff is a private individual and defendant is a large corporation, defendant's assertions regarding monetary expense and difficulty in litigating in a distant forum are likely to be disregarded. *Miracle v. NYP Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000).

Here, Plaintiff is an individual. Defendant is a corporation. Defendant's assertions it will be burdened attending hearings, depositions, and court appearances is not persuasive. As the Court indicated in *Miracle*, Defendant's assertions regarding monetary expenses and difficulty in litigating against an individual Plaintiff are likely to be disregarded. Transferring venue to the state court would be much more inconvenient for Plaintiff (an individual) then this corporate Defendant. Plaintiff has already incurred the costs associated with discovery and litigation. Plaintiff has completed most of his discovery in the case, has already retained experts and incurred the costs associated with that, and incurred attorneys' fees and costs in reference to discovery and trial preparation. Consequently, transferring any aspect of the instant case to the state court without the proper motion before the court, and especially when Defendant has not met its burden would be an injustice to Plaintiff.

    **C.**    **The Most Powerful And Most Effective Stimulant Of Fair Settlements Of Civil Actions Is The Inexorable Progress To Trial; Not Staying A Case.**

The inclusion of the desire to foster settlement in the list of stated objectives in Rule 16(a) is worthy of some note. Many judges regarded promoting settlement as one of the chief purposes of Rule 16. *Mott v. City of Flora*, 3 F.R.D. 232 (E.D. Ill. 1943). *See also De Loach v. Crowley's, Inc.*, 128 F.2d 378 (C.C.A. 5th Cir. 1942); Purpose of Rule 16, 6A Fed. Prac. & Proc. Civ. § 1522 (3d ed.). By way of contrast, Judge William H. Becker, the Chief Judge of the Western District of

Missouri, who did not believe it appropriate for the judge to participate in or encourage settlement negotiations at the pretrial conference, remarked in speeches before several symposia on federal practice that:

> **"Except in rare instances, the most powerful and most effective stimulant of fair settlements of civil actions is the inexorable progress to trial on a day certain, with adequate opportunities for mutual discovery of the unprivileged material information."** [Emphasis added]

Judge Charles E. Clark, who served as Reporter to the original Advisory Committee on the rules, once stated that a direct reference to settlement in Rule 16 was intentionally omitted because the rulemakers felt that settlements would result naturally from the pretrial conference (*G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 848 F.2d 1415, 1422 (7th Cir. 1988), *citing Wright & Miller*; the judge thought that if a provision dealing with settlement were included, courts might incorrectly assume that emphasis should be placed on it, which might reduce the conference to a mere instrument to compel negotiations. *Clark, Objectives of Pre-Trial Procedure*, 17 Ohio St.L.J. 163 (1956). Under this view, a passive role for the judge regarding settlement would be appropriate and still produce results. *Reports of the Conference for District Court Judges: The Settlement Process*, 59 F.R.D. 252 (1973). *See also the remarks of Associate Justice Brennan in the Seminar on Protracted Cases*, 23 F.R.D. 319, 378–79 (1958). As noted by the Advisory Committee,

> [e]mpirical studies reveal that when a trial judge intervenes personally at an early stage to assume judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps, the case is disposed of by settlement or trial more efficiently and with less cost and delay than when the parties are left to their own devices.

See the Advisory Committee Note to the 1983 amendment to Rule 16, which is set out in vol 12A. The empirical study to which the Advisory Committee refers is *Flanders, Case Management and Court Management in United States District Courts 17 (Fed. Jud. Center 1977)*. These gains must be weighed against the charges that managerial judges are changing the traditional concept of adversarial justice that is the core of the American judicial system. *Resnik, Managerial Judges*, 96 Harv. L. Rev. 376 (1982).

    The present case before this U.S. District Court should not be stayed, nor relinquished to the state court for mediation. Mediation, although a useful tool in settling disputes, only works when both parties wish to sincerely partake in the mediation to resolve their disputes. If the court is so inclined to order parties to mediation, it should be before a mediator that both parties agree on and within the jurisdiction of the U.S. District Court where this case was filed. Indeed, a settlement conference handled by another member of this court or by a magistrate would likely prove to be a more effective tool in settling the particular disputes arising in the present lawsuit.

### D. The Parties Can Schedule A Mediation Prior to the Settlement Conference.

Pursuant to the Rule 16 Scheduling Order, the settlement conference in the Husted case is set for August 18, 2015. The State court mediation schedule provides the earliest date of mediation for certain cases are September 14-28, 2015 and the last ones January 4-11, 2016, *or as otherwise agreed by the parties* [italics added]. Indeed, it would make more sense to keep the currently scheduled settlement conference date of August 18, 2015 on calendar as that is one month before the state court mediation. If Defendant still insists on its willingness to participate in a meaningful mediation the parties can meet and confer on scheduling a mediation as early as July, one month prior to the August 18, 2015 settlement conference.

More importantly, there are absolutely no parameters or guidelines set in place as to when the mediation has to be completed by if cases do not settle. In the instant case, if the settlement conference is not successful, trial is set for November 17, 2015. Furthermore, if the case is not resolved at mediation then Plaintiff's trial date will have been vacated as the result of the stay. Conversely, if the case does not resolve at the state court mediation, then there are no guidelines for a trial date. The state court simply provides that the case goes back to a scheduling conference to set a new trial date. How is it fair for Plaintiff to give up his trial date in the hopes Defendant will settle the dispute between them. Without a trial date in place, there is absolutely **no incentive** for Defendant to settle the matter. If

Defendant is truly serious about resolving this case, then it should have no issue with proceeding to a July mediation, and/or keeping the scheduled August 18, 2015 settlement conference on calendar, and keeping the trial date and all other dates on calendar. There would be no other reason not to want to keep the trial date on calendar.

Additionally, the Court is aware that the parties have engaged in mediation before in another clergy sexual abuse case to no avail. In fact, mediation was nothing more than a stall tactic by this Defendant to continue to delay the case. Furthermore, many other diocese and religious orders in clergy sexual abuse cases around the country, similar to the Defendant in the present case, have used the pretense of mediation to stall litigation and gain an unfair advantage at shifting and hiding assets prior to filing for bankruptcy. *See Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015) (Archdiocese of Milwaukee bankruptcy case)[1].

---

[1] In *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015), a major victory for some 575 victims of childhood rape and sexual assault by dozens of Milwaukee Roman Catholic clergy, the 7th Circuit Federal Court in Chicago ruled this afternoon in a strongly worded statement that a $58 million dollar "cemetery trust" constituted by Cardinal Timothy Dolan of New York while he was Archbishop of Milwaukee is not protected by the first amendment. The ruling could have major consequences for Dolan and the Vatican, since the court can now determine if the trust was fraudulently created by him and the Vatican before the Archdiocese declared bankruptcy four years ago.

The 7th Circuit overturned a previous decision by controversial Federal Court Judge Rudolph Randa in Milwaukee. Randa had barred any examination of Dolan's transfer of the money into a new "cemetery trust" before the archdiocese declared bankruptcy, essentially declaring that so called church "canon law" trumped US Federal Law in constituting the legality of the trust.

In a letter by Dolan to the Vatican seeking permission from the Pope to create the trust, Dolan states that, in part, the trust was being created in order to prevent US courts from compensating victims of clergy sex crimes. That means the trust was created for purposes of fraud, which would not only return the money back to the Archdiocese to be used to pay creditors in the current bankruptcy but also raises questions of criminal misconduct.

The filed chapter 11 cases are:

1. Diocese of Tucson
2. Archdiocese of Portland
3. Diocese of Spokane
4. Diocese of Davenport (Iowa)
5. Catholic Bishop of Northern Alaska aka Diocese of Fairbanks
6. Society of Jesus, Oregon Province
7. Diocese of Wilmington
8. Diocese of Helena (Montana)
9. Diocese of Stockton (California)
10. Diocese of Gallup (New Mexico and parts of Arizona)
11. Christian Brother of Ireland (2 corporations filed bankruptcy: Christian Brothers of Ireland and Christian Brothers Institute)(lay religious order)
12. Archdiocese of Minneapolis
13. Archdiocese of Milwaukee

Vacating the trial date and staying the case would benefit no one but the Defendant, and could aid it in its quest to ultimately file for bankruptcy as has become a strategy of the Catholic Church.

## IV. Conclusion

Based on the foregoing, Plaintiff respectfully requests the Court to deny Defendants' motion to join omnibus mediation and stay proceedings in its entirety and to grant such further relief to Plaintiff as the Court deems necessary.

---

Finally, if Dolan had to seek permission from the Vatican and the Pope (then Benedict XVI) to create the trust, that clearly means that it is the Vatican, and not the Archdiocese of Milwaukee which is ultimately in charge of local church finances.  The upcoming court examination, including the deposition one presumes of Dolan and, logically, top Vatican officials, even Benedict himself, could, for the first time, open the door to the long contested relationship between local bishops and the Vatican, most importantly, in matters of billions of dollars of church money and its deployment in the decades long cover up of abusive priests around the globe.

DATED:  Honolulu, Hawaii, June 5, 2015.

       JAW LEGAL

       LAW OFFICES OF BETTI & ASSOCIATES


       By:  \_\_/s/Jared A. Washkowitz_____
            Jared A. Washkowitz
            Michele M. Betti

       Attorneys for Plaintiff DAVID HUSTED, JR.

Case 1:14-cv-00192-SOM-KJM   Document 99   Filed 06/05/15   Page 13 of 13     PageID #: 

PLAINTIFF'S OPPOSITION TO DEFENDANT ROMAN CATHOLIC CHURCH IN THE STATE OF HAWAII, A.K.A. THE ROMAN CATHOLIC DIOCESE OF HONOLULU'S MOTION TO JOIN OMNIBUS MEDIATION AND STAY PROCEEDINGS - 13