IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID HUSTED, JR., | ) | CIVIL NO. 14-00192 SOM/KJM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING THE SOUTHDOWN |
| | ) | INSTITUTE'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| ROMAN CATHOLIC CHURCH IN THE | ) | |
| STATE OF HAWAII, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING THE SOUTHDOWN INSTITUTE'S
MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION.**

In the Complaint filed on April 11, 2014, Plaintiff David Husted, Jr., alleges that between 1979 to 1982, while he was a minor, he was sexually abused by Father James A. Spielman of The Diocese of Buffalo, New York. The legislature of Hawaii has reopened the statute of limitation for such claims, and no party is arguing at this time that the present action is time-barred.

In addition to suing Spielman, Husted sues The Diocese of Buffalo, the Roman Catholic Church in the State of Hawaii, Southern Tier Catholic School Archbishop Walsh Academy, and The Southdown Institute. Before the court is Southdown's motion for summary judgment on all claims asserted against it. Husted claims that Southdown negligently treated Spielman for a psycho-sexual disorder before the alleged abuse, and claims that Southdown is legally responsible for having allowed Spielman to

go back to work as a priest, giving Spielman the opportunity to sexually abuse Husted.

Southdown argues that the only admissible evidence shows that it did not treat Spielman until after the period in which Husted was allegedly abused. Southdown also argues that this court lacks personal jurisdiction over it. This court determines that Southdown is entitled to summary judgment because Husted fails to raise a genuine issue of fact as to whether Southdown treated Husted before the alleged abuse of Husted ended.

**II.      FACTUAL BACKGROUND.**

The Complaint alleges that Husted was sexually abused from 1979 to 1982 by Spielman while Spielman, an ordained Roman Catholic priest, was on the faculty of Archbishop Walsh High School and Husted was a teenaged student there. ECF No. 1, PageID #s 2, 3-4, 9. Husted says that Spielman abused and molested him "at churches, rectories, schools and retreat centers," and that some of the abuse occurred in Hawaii, where Spielman allegedly accompanied Husted in or around 1982. Id., PageID #s 12-13.

According to Husted, Spielman was treated by Southdown, an organization in Ontario, Canada, that provides support for members of the clergy with addiction and mental health issues. Id., PageID #s 4, 10. Husted alleges that "sometime between 1970

and 1993 Perpetrator Spielman was assigned to The Southdown Institute in Ontario, Canada specifically to address his issues with addiction and mental health relating to the sexual abuse of minors." Id., PageID # 10.  Plaintiff contends that Southdown "knew and/or should have known the Perpetrator was not fit to serve in ministry involving interactions with children yet released him back into ministry."  Id., PageID # 5.

Southdown did not have a records retention policy until 2000.  See Affidavit of Dorothy Heiderscheit, ECF No. 156-1, PageID # 1465.  Since then, Southdown has maintained patient records for a fourteen-year period after patients cease treatment at Southdown.  Id.  Southdown only keeps accounting records for seven years.  Id.  Southdown's admission that it did not keep old records comports with the opinion of Husted's alleged expert, who opines that records about Husted's treatment are missing.  See Aff. of Thomas P. Doyle ¶ 14, ECF No. 160-3, PageID # 1587 ("Spielman's file should contain various reports from Southdown but it does not."). There is no evidence in the record establishing that, before discarding Spielman's records, Southdown had reason to think that it should maintain or was required to maintain the records.  No evidence suggests that Southdown knew or should have known that the Hawaii legislature would reopen the limitations period for the type of claims Husted asserts.

For an individual whose treatment at Southdown ended more than fourteen years before Southdown had reason to retain records, Southdown's only record of the individual's treatment is a one-page summary showing that individual's name and dates of treatment, and the identity of the person who referred the individual for treatment.  Id., PageID #s 1465-66.  Southdown's one-page summary of Spielman's attendance indicates that Spielman was treated at Southdown from December 26, 1989, to May 25, 1990, and was "Reactivated" on August 18, 1993.  ECF No. 156-3, PageID # 1469.  Thus, according to Southdown's normal business records, Spielman was treated at Southdown after Spielman allegedly sexually abused Husted from 1979 to 1982.

In contending that Spielman may have been treated at Southdown prior to the abuse, Husted relies on a log of allegedly privileged documents.  That privilege log lists as a document withheld during discovery a letter dated June 5, 1972, that pertained to "Personal Private Medical Information."  ECF No. 160-2, PageID # 1575.  It also describes other documents dated after 1982 that Husted says might reference pre-1982 treatment of Spielmen at Southdown for a sexual disorder.  Husted's attorney asserts in her declaration that Spielman had a "long history of entering into and out of treatment facilities and medical treatment for psycho-sexual disorders including pedophilia."  ECF No. 160-1, PageID # 1569.

On August 3, 2015, the Magistrate Judge held a discovery conference regarding The Diocese of Buffalo's privilege log. Ultimately, he ordered The Diocese of Buffalo "to produce documents which describe or refer to Fr. James A. Spielman having problems with or treatment for pedophilia prior to Plaintiff Husted's alleged abuse from 1979 to 1982 regardless of when the document itself was created." ECF No. 132, PageID #s 1355-56. The Diocese of Buffalo has represented to the court that none of the documents on the privilege log fell into that category.

In the eight months since the Magistrate Judge's order, Husted has apparently not obtained any document from The Diocese of Buffalo showing or even suggesting that Spielman was treated at Southdown prior to the period from 1979 to 1982 during which Husted was allegedly abused. The record contains no evidence that The Diocese of Buffalo has violated the court order regarding production of documents indicating that Spielman was treated at Southdown.

At the hearing on the present motion, counsel for The Diocese of Buffalo confirmed that none of the documents on the privilege log fell within the court order. Counsel also specifically addressed the letter dated June 5, 1972, a date preceding the start of the abuse Husted allegedly suffered. According to counsel, that letter did not come from Southdown and does not mention or relate to treatment of Spielman at Southdown.

Husted offers Thomas P. Doyle, who was ordained as a Catholic priest and has worked on sex abuse cases involving clergy, as an expert witness. Doyle notes that Southdown's records should include more about Spielman than has been produced. As noted earlier in this order, this is not a revelation, as Southdown itself says Spielman's file was discarded given its age. Nothing in Doyle's affidavit indicates that Spielman was treated at Southdown prior to or even during the period of alleged abuse. See ECF No. 160-3. At most, Doyle says that he has reviewed a document produced by the Diocese of Buffalo that shows that "Spielman was accused of sexually abusing a minor boy for a four-year period in the '70s." Id. ¶ 13. Doyle says that The Diocese of Buffalo settled with the boy (whose initials were reportedly "T.G.") "shortly after the abuse was reported." However, Doyle does not indicate that he has seen any evidence that the abuse was reported before or during Spielman's alleged abuse of Husted between 1979 and 1982. Doyle points to a note "to the bishop, dated March 15, 1991, [that] reveals that Spielman was at Southdown Institute at that time." This court reads the reference to "at that time" to mean 1991, not the "four-year period in the '70s" during which T.G. was reportedly abused. Id.

Although Husted describes Southdown as a treatment facility near The Diocese of Buffalo that treated clergy with

psycho-sexual disorders, Husted's counsel referred at the hearing to the existence of three treatment facilities used by the Roman Catholic Church to treat priests with sexual disorders. Co-counsel similarly acknowledged at the hearing that there "may be" treatment facilities other than Southdown. There is no admissible evidence in the record suggesting treatment of a priest within The Diocese of Buffalo for a sex-related disorder would necessarily have been at Southdown, or that, even if Southdown did treat a priest, that the treatment was necessarily for a psycho-sexual disorder. This court notes that Paragraph 2.3 of the Complaint describes Southdown as having been "established in the 1980s to help the needs of religious and clergy with addictions and mental health issues." ECF No. 1. Husted's "Separate Statement of Undisputed Material Facts" repeats that description at Paragraph 5. ECF No. 160-4.

**III.     STANDARD.**

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

   The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

   All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.

Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.      ANALYSIS.**

Southdown's motion for summary judgment argues first, that this court lacks personal jurisdiction over it, and second, that Southdown is not legally responsible for any of Husted's alleged injuries because the only admissible evidence indicates that Southdown treated Husted only after the alleged abuse had ended. The court grants the motion on the second ground.

**A.    Southdown May Have Waived Its Personal Jurisdiction Defense.**

The Due Process Clause of the United States Constitution protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The Due Process Clause requires Southdown to have had "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316. To have had the required minimum contacts, Southdown must have acted and had

9

a connection with Hawaii in a manner that should have led it to "reasonably anticipate being haled into court" in Hawaii. See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The "minimum contacts" requirement performs two functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." World-Wide Volkswagen, 444 U.S. at 292.

In the present case, the minimum contacts necessary for exercising personal jurisdiction over Southdown may well have been lacking. Even if that is so, Southdown may have waived any personal defense. That an objection to personal jurisdiction may be waived is clear. See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982); Bel-Rey Co. V. Chemrite (Pty) Ltd., 181 F.3d 435, 443 (9th Cir. 1999). As the Supreme Court noted in Insurance Corp. of Ireland, 456 U.S. at 704, "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue."

Although Southdown raised personal jurisdiction as a defense in its December 2014 Answer, ECF No. 63, PageID # 680, it

asked this court to rule on the merits of the claims against it when it filed a motion for summary judgment on May 5, 2015.  <u>See</u> ECF No. 84.  This motion was filed after a denial of an earlier motion to dismiss.  Neither motion argued a lack of personal jurisdiction over Southdown.  <u>See</u> ECF Nos. 37 and 84.  That is, Southdown affirmatively sought judgment on the merits via its motion of May 5, 2015.  Although Southdown later withdrew that motion in light of mediation proceedings, that motion was renewed on February 2, 2016, at which time the personal jurisdiction argument was added.

        Southdown appears to have been actively participating in discovery.  Given its delay until February 2016 in raising the issue of personal jurisdiction, Southdown arguably waived the defense.  <u>See</u> <u>In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.</u>, 15 F.3d 1230, 1236 (3d Cir. 1994) ("a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum"); <u>Bel-Ray Co. v. Chemrite (Pty) Ltd.</u>, 181 F.3d 435, 443 (3d Cir. 1999) (concluding that defendants submitted to jurisdiction of court by filing motion for summary judgment with respect to counterclaims; ruling that personal jurisdiction defense waived by waiting to raise it until after the summary judgment motion was denied).

However, this court is cognizant that the Ninth Circuit has not made statements equivalent to those made in the Third Circuit cases cited above. This court therefore refrains from ruling on the issue of whether Southdown may pursue its personal jurisdiction defense. This court's ruling on the second ground raised by the present motion resolves the claims against Southdown.

### B. Southdown is Entitled to Summary Judgment On the Merits.

Husted's Complaint asserts nine claims against Southdown: (1) offensive physical contact/childhood sexual assault; (2) imminent battery; (3) gross negligence; (4) negligent supervision/failure to warn; (5) negligent hiring/retention; (6) fraud; (7) negligent infliction of emotional distress; (8) intentional infliction of emotional distress; (9) premises liability; (10) punitive damages. ECF No. 1, PageID # 16-33. Each of these claims is premised on the argument that Southdown should be held legally responsible because it inadequately treated Spielman and then allowed him to continue working, which gave Spielman the opportunity to injure Husted.

Southdown seeks summary judgment with respect to each claim, arguing that the record contains no evidence that it treated Spielman before or during the alleged sexual abuse of Husted. Southdown's one-page summary of Spielman's treatment at

Southdown indicates that he was treated at Southdown from December 26, 1989, to May 25, 1990, and "Reactivated" on August 18, 1993.  ECF No. 156-3, PageID # 1469.  This is the only admissible evidence concerning when Spielman received treatment at Southdown.  Husted alleges that Spielman abused him between 1979 and 1982.  Southdown cannot be legally responsible for abuse occurring before Southdown treated Spielman.  Accordingly, the court grants summary judgment in favor of Southdown.

In so ruling, the court is giving no weight to a statement in Husted's lead attorney's declaration that "Spielman was treated for his psycho-sexual disorders including pedophilia as early as the 1970s at Southdown."  ECF No. 160-1, PageID 1571.  This statement made under penalty of perjury purports to be "stated of [counsel's] own personal knowledge."  ECF No. 160-1, PageID # 1568.  However, at the hearing on the present motion, counsel conceded that the basis of her "personal knowledge" was what she has learned as Husted's attorney.  That is, her knowledge was gained in connection with this litigation.  Counsel's knowledge of whether Southdown treated Spielman for a psycho-sexual disorder in the 1970s is no more "personal" than this court's (or an appellate court's) knowledge might be.  Counsel is relying on the statements of others, not on her personal observations of Spielman's or Southdown's actions in the 1970s.  Clearly counsel could not testify at trial as to whether

Spielman was treated at Southdown prior to or during Husted's alleged abuse.

Husted also relies on the privilege log produced to Husted by The Diocese of Buffalo, arguing that the log suggests that Spielman may have been treated at Southdown in 1972. See ECF No. 160-1, PageID # 1569. As noted earlier, the privilege log identifies a letter dated June 5, 1972, pertaining to "Personal Private Medical Information." ECF No. 160-2, PageID # 1575. It has similar entries for documents dated after the alleged abuse had ended. Id. Husted's attorney says in her declaration that Spielman had a "long history of entering into and out of treatment facilities and medical treatment for psycho-sexual disorders including pedophilia." ECF No. 160-1, PageID # 1569. Even if this is so, it does not follow that the 1972 document (or any other document in the log) contains evidence that Southdown was among those facilities.

In asking this court to draw an inference that the 1972 document incriminates Southdown, Husted is ignoring the August 2015 order concerning the privilege log that required The Diocese of Buffalo to produce "documents which describe or refer to Fr. James A. Spielman having problems with or treatment for pedophilia prior to Plaintiff Husted's alleged abuse from 1979 to 1982 regardless of when the document itself was created." ECF No. 132, PageID #s 1355-56. Counsel for The Diocese of Buffalo

14

represented at the hearing that none of the documents referenced in the privilege log pertained to Spielman's treatment at Southdown.

Southdown met its initial burden on the present motion for summary judgment of demonstrating that it is entitled to judgment as a matter of law because it did not treat Spielman prior to or during Husted's alleged abuse.

At the hearing on the present motion, Husted also argued that this court should consider what Husted called "circumstantial" evidence that Spielman had been treated at Southdown in the 1970s. What Husted pointed to, however, was mere speculation, not circumstantial evidence at all. Husted's own Complaint alleges that Southdown was not even established until the 1980s. The court is not, of course, relying on the Complaint as evidence. Indeed, Southdown might conceivably be a successor to an earlier entity and may have assumed its predecessor's liabilities. The court points to the Complaint only by way of noting that Husted's own allegations fly in the face of Husted's argument that the privilege log establishes that Southdown treated Spielman during the 1970s.

Because Husted fails to raise a genuine issue of fact as to whether Spielman was treated at Southdown at any time relevant to Husted's claims of sexual abuse. Southdown is

entitled to summary judgment with respect to all claims asserted against it in the Complaint.

### C. The Court Denies Husted's Rule 56(d) Request.

Husted urges this court to allow further discovery before ruling on the present motion. A party requesting a continuance under Rule 56(d) of the Federal Rules of Civil Procedure bears the burden of (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion. See Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted); accord Moss v. U.S. Secret Serv., 572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56([d]) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact." (punctuation, quotation marks, and citation omitted)).

Additionally, the party seeking a Rule 56(d) continuance must demonstrate that it diligently pursued discovery. See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1005 (9th April 6, 2016Cir. 2002) ("The failure to conduct discovery

diligently is grounds for the denial of a Rule 56(f) motion."); Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment."); Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) ("the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past").

Husted does not demonstrate entitlement to a Rule 56(d) continuance. Husted's attorney's declaration does not specifically identify relevant information reasonably believed to exist that is essential to resist the summary judgment motion. At most, she says that discovery requests were served on March 30, 2015, but that Defendants have not produced requested documents. See ECF No. 160-1, PageID # 1571. She does not say which documents she is waiting for or why she thinks documents relevant to this motion exist. Nor does she demonstrate diligence in pursuing discovery. Instead, she speculates that references in the privilege log to "Personal Private Medical Information" might be references to treatment at Southdown. The Magistrate Judge ordered that documents listed on the privilege log be turned over to Husted if they related to such treatment. This court has no basis for assuming that The Diocese of Buffalo is ignoring the court order.

Husted says that it would serve the interests of justice for the court to hold the motion in abeyance until the close of discovery or to deny the motion and allow a jury to decide when Southdown treated Spielman.  While this court agrees that a person who establishes that he was abused by clergy is entitled to be compensated, that cannot mean that whenever a party is sued that party must automatically proceed to trial.  Rule 56 of the Federal Rules of Civil Procedure provides that trial is not warranted if there are no genuine issues of material fact to be tried.  Husted fails to show how he could possibly meet his burden at trial of showing by a preponderance of the evidence that Southdown acted wrongfully at a time relevant to Husted's claims against Southdown.

At most, Husted asks for more time to conduct discovery to determine whether Spielman might have sought treatment at Southdown for a sexual disorder prior to the alleged abuse at issue in this case.  But Husted, having had ample opportunity to at least provide a basis for believing such evidence exists, fails to provide such a basis.  Husted cannot simply come into court and ask for a continuance of the present motion without either providing some reason for this court to suspect that The Diocese of Buffalo has violated the Magistrate Judge's order or satisfying the requirements of Rule 56(d) of the Federal Rules of Civil Procedure.

**V.      CONCLUSION.**

Because Husted identifies no genuine issue of fact as to whether Southdown treated Spielman before or during the alleged abuse of Husted, Southdown is entitled to summary judgment on all claims asserted against it.

The court understands the difficulty of obtaining evidence from many decades ago.  Accordingly, if Husted timely discovers some evidence that Southdown treated Spielman before or during the alleged sexual abuse at issue in this case, Husted may move for reconsideration of this order.  The court cannot, of course, say in advance that in that event claims against Southdown may proceed to trial.  At this point, this court makes no comment on what the future may bring or on whether the claims against Southdown will be legally cognizable if supported by such new evidence.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 7, 2016.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Husted v. Roman Catholic Church in the State of Hawaii, et al., Civ. No. 14-00192 SOM/KJM; ORDER GRANTING THE SOUTHDOWN INSTITUTE'S MOTION TO FOR SUMMARY JUDGMENT